IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RONALD TRIBBLE, | Civ. No. 6:20-cv-00181-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| SURFACE PREPARATION SYSTEMS, INC.; SURFACE LLC; SURFACE WORLDWIDE, LLC; SURFACE HOLDINGS, LLC; RONALD BENSON; DLS FACTORY CONSULTING LLC; ROTO GRIT LLC, | |
| Defendants. | |

AIKEN, District Judge.

This matter comes before the Court on Motions to Dismiss filed by Defendants Surface Worldwide LLC, Surface LLC, Surface Preparation Systems, Inc., and Surface Holding LCC (collectively the "Surface Defendants,"), ECF No. 21; by Defendant Ronald Benson, ECF No. 24, and by Defendant Roto Grit LLC, ECF No. 35, as well as a Motion to Dismiss the Crossclaim of Defendant DLS Factory Consulting LLC filed by the Surface Defendants and Roto Grit, ECF No. 36. The Court concludes that these motions are appropriate for resolution without oral argument. For the reasons set forth below, the Motions are DENIED.

## BACKGROUND

Plaintiff Ronald Tribble is a resident of Douglas County, Oregon. First Am. Comp. ("FAC") ¶ 1. ECF No. 13.

Defendant Surface Preparation Systems, Inc. is a Minnesota corporation. FAC ¶ 2. Defendants Surface LLC, Surface Worldwide LLC, and Surface Holdings LLC are Nevada limited liability companies. *Id.* Collectively, these entities are the "Surface Defendants." Defendant Ronald Benson is a resident of Iowa and the sole member and/or shareholder in each of the Surface Defendants (collectively, the "Benson-Surface Defendants"). *Id.* at ¶ 3.

Defendant DLS Factory Consulting LLC is an Iowa limited liability company, which claims an interest in the subject matter of this action. FAC ¶ 4.

Defendant Roto Grit LLC is a Wisconsin limited liability company established on November 22, 2019. FAC ¶ 5. Dale Roberts is the registered agent for Roto Grit. *Id.*

This case concerns a series of agreements between Plaintiff and the Benson-Surface Defendants to finance the development and manufacture of a roto grit drying machine. Tribble Decl. ¶ 2. ECF No. 39. The relationship started with a loan from Plaintiff to the Benson-Surface Defendants in October 2016, followed by additional loan agreements, but the relationship deteriorated over the next several years. *Id.* at ¶¶ 2-4.

On October 11, 2016, Plaintiff entered into an agreement captioned "State II Grit Dryer Loan Agreement," whereby Plaintiff agreed to loan $300,000 to the

Surface Defendants "to fund the manufacturing of the grit dryer and purchase of a motorhome/trailer," (the "October 2016 Agreement"). FAC Ex. 2, at 1. The loan was to be secured by an interest in the grit dryer and associated intellectual property. *Id.* at 2.

The October 2016 Agreement was modified by Plaintiff and the Benson-Surface Defendants on November 25, 2016, which memorialized Plaintiff's security interest in a motor home and trailer (the "November 2016 Agreement"). FAC Ex. 3.

On March 12, 2017, Plaintiff and the Benson-Surface Defendants entered into another agreement captioned "Surface LLC Investment Amended Agreement," (the "March 2017 Agreement"). FAC Ex. 4. The March 2017 Agreement memorialized that $225,000 of the funds provided for in the October 2016 Agreement had been disbursed. *Id.* at 1. The March 2017 Agreement established Plaintiff would transfer the remaining $75,000 to the Benson-Surface Defendants, along with an additional loan of $50,000. *Id.* Plaintiff was to become a Class B Member of the Surface Defendants and would be entitled to $750,000 in the event of a sale or liquidating distribution of the Surface Defendants. *Id.* at 3.

On May 16, 2017, Plaintiff and the Benson-Surface Defendants entered into another agreement, captioned "Continuation for Funding of Surface LLC," (the "May 2017 Agreement"). FAC Ex. 5. The May 2017 Agreement provided the extension of a $100,000 line of credit to the Benson-Surface Defendants to be used for specific purposes. FAC Ex. 5, at 1. Plaintiff and the Benson-Surface Defendants agreed to the establishment of a board to oversee purchases made by the Surface Defendants.

*Id.* In addition, Plaintiff's ownership share in the Surface Defendants was increased from 1.5% to 2.5%. *Id.*

On September 24, 2017, Plaintiff entered into yet another agreement with the Benson-Surface Defendants, captioned "Surface LLC Amended Agreement for Additional Funding," (the "September 2017 Agreement"). FAC Ex. 6. The September 2017 Agreement memorialized that Plaintiff had loaned $400,000 to the Benson-Surface Defendants. *Id.* at 1. The September 2017 Agreement provided for the loan of an additional $100,000 to be used for specific purposes related to the development, testing, and marketing of the Surface Roto Grit Dryer. *Id.* at 2.

On March 9, 2018, Plaintiff and the Benson-Surface Defendants entered into another agreement captioned "Addendum to Continuation for Funding of Surface LLC-May 16, 2017," (the "March 2018 Agreement"). FAC Ex. 7. The March 2018 Agreement modified the May 2017 Agreement to account for the sale of the tractor, which had been serving as a security for the loan. *Id.* at 1. The March 2018 Agreement provided: "Upon Sale of the Tractor, security up to the amount secured by the Tractor (i.e., $30,000.00) plus $20,000 is transition to intellectual property, including patents, patent applications, trademarks, know-how, as provided in the attached Intellectual Property Schedule." *Id.* at 1-2.

On February 19, 2019, Plaintiff and the Benson-Surface Defendants entered into an agreement captioned "Term Sheet Restructuring of Tribble Surface Agreement," (the "February 2019 Agreement"). FAC Ex. 8. The February 2019 Agreement was intended "to memorialize a binding agreement to form an operating

agreement and restructure agreements containing existing obligations between Ron Tribble and Surface." *Id.* at 3.

On March 19, 2019, Plaintiff and the Benson-Surface Defendants entered into a final contract, captioned "Loan Modification Agreement," (the "March 2019 Agreement"). FAC Ex. 1. The March 2019 Agreement acknowledged the existing debt owed to Plaintiff by the Benson-Surface Defendants and provided that the Benson-Surface Defendants were jointly and severally liable for the indebtedness. FAC Ex. 1, at 1. The March 2019 Agreement provided that any provision of the prior agreements between Plaintiff and the Benson-Surface Defendants remained in effect "except as expressly modified herein." *Id.* The March 2019 Agreement provided terms governing the repayment of Plaintiff's loans to the Benson-Surface Defendants and acknowledged Plaintiff's continuing security interest, including his interest in the intellectual property associated with the grit dryer. *Id.* at 1-2. The March 2019 Agreement also included a forum selection clause:

> Borrowers and Lender hereby modify the Loan Agreement and Addendums and agree that such prior agreements and this Modification shall be governed by the law of the State of Oregon and that any and all disputes hereunder shall be submitted to the exclusive jurisdiction of the courts in Oregon. The prior provision in the Loan Agreement regarding application of Nevada law and jurisdiction of Nevada courts is hereby revoked and is null and void.

FAC Ex. 1, at 2.

In March 2019, Plaintiff filed a UCC Financing Statement in Minnesota, Iowa, and Nevada memorializing his security interest in

> Any and All Grit Dryers now existing or hereafter built or completed, and all parts and product of any Grit Dryer machines as they are being

> built and all general intangibles owned by Debtor [the Benson-Surface Defendants], including the right to rent or sell any Grit Dryer and all intellectual property including US Patent 8,920,210, US patent 9,058,707, US Patent 9,592,587, Patent Applications 20170297169 and 20160016289 regarding systems and methods pertaining to drying grit used for abrasive sandblasting and managing and maintaining blasting machines, know-how in CAD drawings for the Roto Grit Dryer #1 and trademarks for SURFACE, Roto Grit Dryer and Fast-Pass

FAC Ex. 9, at 1-2 (Minnesota filing), 3 (Iowa filing), 4-5 (Nevada filing).

The Benson-Surface Defendants did not repay the loan as required and, on April 22, 2019, Plaintiff's counsel sent a demand letter to the Benson-Surface Defendants declaring them in default of the terms of the March 2019 Agreement and demanding either the immediate payment of $603,744.76, representing the principal and accrued interest on the loans or the transfer of the collateral to Plaintiff. FAC Ex. 10.

Following the demand letter, Plaintiff and the Benson-Surface Defendants engaged in protracted negotiations to resolve the Benson-Surface Defendants' outstanding obligations. FAC ¶ 24. This included communications with Dale Roberts, a member of an investor group interested in investing in the completion of the roto grit dryer. *Id.* Plaintiff and Roberts also negotiated directly but they were not able to come to an agreement to resolve the obligations between Plaintiff and the Benson-Surface Defendants. Tribble Decl. ¶¶ 8-13.

No payment was made on the loans and, on November 22, 2019, Plaintiff's counsel sent another demand letter to the Benson-Surface Defendants, advising them that the outstanding balance of the loan was $634,802.30 and that, unless payment

was made in full by December 3, 2019, Plaintiff would file suit to foreclose his security interests in Oregon state court. FAC Ex. 11.

On the same day, November 22, 2019, Roto Grit LLC was formed in Wisconsin, with Dale Roberts as one of its officers. Roberts Decl. ¶¶ 1-2. ECF No. 23. Roto Grit does not have any business locations in Oregon and has not conducted or solicited any business in Oregon. *Id.* at ¶¶ 3-5. Plaintiff did not learn of Roto Grit's existence until December 2019. Tribble Decl. ¶ 14.

Plaintiff filed this action in Lane County Circuit Court on December 6, 2019. FAC ¶ 6.

On December 18, 2019, Benson and the Surface Defendants entered into an Asset Purchase Agreement with Roto Grit. FAC Ex. 12. Roto Grit agreed to pay $50,000 to the Benson-Surface Defendants for the Purchased Assets, "plus the sum of the Assumed Liabilities not to exceed $650,000.00." *Id.* at 3. The Purchased Assets included "[g]enerally, all of the assets and properties of every kind and nature, real and personal, tangible and intangible which are owned by the Seller [the Benson-Surface Defendants] in which the Seller has any right, title or interest as of the Closing," including a list of specific assets and excluding Benson's personal property "not contributed to or used by any Surface Entity." *Id.* at 20-22. The assets acquired by Roto Grit include the property in which Plaintiff claims a security interest.

Roto Grit also agreed to a limited assumption of liabilities and obligations held by the Benson-Surface Defendants. FAC Ex. 12, at 2. As relevant to the present case, the Asset Purchase Agreement provided:

> Specifically with respect to Ronald Tribble ("Tribble"), it is acknowledged that Tribble has filed a lawsuit against Seller in the State of Oregon. Seller disputes the obligations owned to Tribble and the security interest in any of the Purchased Assets. The liability to Tribble assumed hereunder shall be subject to the cap on Assumed Liabilities set forth above and shall be payable by Buyer only upon a judicial determination of the amount, if any, owed to Tribble. Buyer shall not be deemed to have assumed any debt or obligation to Tribble until such time as a judgment has been rendered judicially determining the amount owed or other obligation.

FAC Ex. 12, at 2-3.

The Asset Purchase Agreement also contains a clause providing that the state and federal courts of Wisconsin have exclusive jurisdiction over any action under the Asset Purchase Agreement. FAC Ex. 12, at 11.

The Asset Purchase Agreement was negotiated between Benson in Iowa and Roberts in Wisconsin. Benson Decl. ¶ 7. ECF No. 25. Benson is a minority member of Roto Grit and now works with Roto Grit to continue development of the grit dryer. Benson Decl. ¶ 7. Plaintiff did not learn the details of the Asset Purchase Agreement until February 2020. Tribble Decl. ¶ 14.

Plaintiff served the Defendants in the original Oregon state court action by January 24, 2020. FAC ¶ 6. On January 31, 2020, the Surface Defendants removed the case to federal court. *Id.* On April 20, 2020, Plaintiff filed the operative FAC, which added claims against Roto Grit.

## LEGAL STANDARDS

### I. Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal for lack of personal jurisdiction. The plaintiff has the burden of showing

the exercise of personal jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

"In diversity cases, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the non-resident defendant." *IPSL, LLC v. College of Mt. St. Vincent*, 383 F. Supp.3d 1128, 1135 (D. Or. 2019). Oregon Rule of Civil Procedure 4 governs personal jurisdiction in Oregon and confers jurisdiction to the extent permitted by due process. *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). When the state's long-arm statute reaches as far as the Due Process Clause, the court need only analyze whether the exercise of jurisdiction comports with federal due process standards. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

To comport with due process, "the nonresident generally must have 'certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945)).

## II.    Failure to Join a Necessary Party

Federal Rule of Civil Procedure 12(b)(7) provides that a party may move to dismiss a complaint for "failure to join a party under Rule 19." Rule 19 prescribes a two-step analysis to determine whether a party should or must be joined. *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985). Under Rule 19(a)(1), the court must first determine whether the party is necessary. *Id.* A party is necessary if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).

If the party is necessary, but cannot be joined, "whether the party is indispensable such that in equity and good conscience, the suit should be dismissed." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154-55 (9th Cir. 2002) (internal quotation marks and citation omitted). Four factors govern whether a party is indispensable: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment or by shaping the relief; (3) whether judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b). This analysis is "a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa*, 276 F.3d at 1154.

## DISCUSSION

Plaintiff bring claims for (1) breach of contract against the Benson-Surface Defendants and Roto Grit; (2) foreclosure of a security interest in personal property against all Defendants; (3) breach of fiduciary duty against Benson; (4) negligent representation against Benson; (5) claim and delivery against the Benson-Surface

Defendants and Roto Grit; (6) declaratory relief against the Benson-Surface Defendants and Roto Grit; (7) constructive trust against Roto Grit; and (8) a state law claim for fraudulent transfer against the Benson-Surface Defendants and Roto Grit.

In its Answer, ECF No. 20, Defendant DLS Factory Consulting LLC ("DLS") asserts crossclaims and counterclaims against the Benson-Surface Defendants, Roto Grit, and Plaintiff, asserting that DLS also loaned funds to the Benson-Surface Defendants, secured by collateral and that the Benson-Surface Defendants are in breach of those agreements. DLS alleges that its interests in the collateral are superior to Plaintiff's interests. DLS Ans. ¶ 81. DLS seeks to recoup $476,732.25, plus interest accruing at a rate of 10% per annum, as well as a declaration that it holds a superior lien upon the collateral. *Id.* at ¶¶ 86, 90.

Roto Grit moves to dismiss Plaintiff's claims and DLS's crossclaim on the basis that this Court lacks personal jurisdiction over Roto Grit. ECF Nos. 35, 36.[1] Benson and the Surface Defendants likewise assert the claims against Roto Grit must be dismissed for lack of personal jurisdiction and further move to dismiss the FAC on the basis that Roto Grit is a necessary party to the action who cannot be joined. ECF Nos. 21, 24.

The most efficient starting point for the Court's analysis is therefore the question of personal jurisdiction over Roto Grit, which will be dispositive of both Roto Grit's own motion and those of the Benson-Surface Defendants. As noted, Plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Boschetto*,

---

[1] DLS has not responded to Roto Grit's Motion to Dismiss the Cross Claim, but the question of personal jurisdiction over Roto Grit has been fully litigated in Roto Grit's Motion to Dismiss the FAC.

539 F.3d at 1015. "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

As previously discussed, the March 2019 Agreement contains a forum selection clause establishing Oregon as the exclusive jurisdiction for resolving disputes under the Agreement. The parties agree that Roto Grit did not come into existence until months after the March 2019 Agreement was signed and so it is not a signatory to that Agreement. Nevertheless, Plaintiff asserts that Roto Grit is bound by the forum selection clause of the March 2019 Agreement because it inserted itself into the contractual relationship between Plaintiff and the Benson-Surface Defendants when it entered into the Asset Purchase Agreement to acquire the assets of the Benson-Surface Defendants, including the collateral securing Plaintiff's loans.

Personal jurisdiction is a "waivable right," and there are a "variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court," such as through a forum selection clause in a contract. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (internal quotation marks and citation omitted). "Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Id.* (internal quotation marks and citation omitted).

A forum selection clause may be enforced against a non-party in at least two circumstances: (1) when the non-party is a third-party beneficiary of the contract with the clause, *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1180 (9th Cir. 2014), and (2) when the non-party and the conduct at issue are "closely related" to the parties to the contract with the forum selection clause. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). Here, the Court is concerned with the second possibility.

"A non-party is closely related when it is part of the larger contractual relationship between the parties to the agreement with the forum selection clause." *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp.3d 931, 947 (S.D. Cal. Sept. 10, 2019) (internal quotation marks and citation omitted); *see also Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("We held that the forum selection clause applied to all defendants, even though only [one defendant] had signed the contract, because where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." (internal quotation marks and citations omitted)). Courts within the Ninth Circuit have also held that when a defendant meets the standard for applying a forum selection clause in a contract to which the defendant was not a party, that defendant will be subject to personal jurisdiction in the relevant forum. *Mazal Grp. LLC v. Barak*, Case No. CV 18-4983-DMG (FFMx), 2019 WL 4316244, at *2 (C.D. Cal. June 17, 2019).

In this case, the Asset Purchase Agreement transferred the property of the Benson-Surface Defendants to Roto Grit, including the collateral securing the loan between Plaintiff and the Benson-Surface Defendants.[2] It is significant to the Court that Roto Grit entered this situation with its eyes open. The plain language of the Asset Purchase Agreement makes it clear Roto Grit was aware of the terms of the various agreements between Plaintiff and the Benson-Surface Defendants, as well as the pending litigation to enforce the March 2019 Agreement. The supporting declarations show that Roto Grit is using its newly acquired assets to continue performing the work that Plaintiff's loans to the Surface Defendants were intended to finance and Benson remains an integral part of that process. Benson Decl. ¶ 7. The Asset Purchase Agreement also assumes at least some of the Benson-Surface Defendants' liabilities, including the debt owed to Plaintiff, subject to the outcome of the litigation. In practical terms, Roto Grit has essentially stepped into the shoes of the Benson-Surface Defendants.

As in *White Knight Yacht*, the Court concludes that Roto Grit has made itself "part of the larger contractual relationship" existing between Plaintiff and the Benson-Surface Defendants. Consistent with *Manetti-Farrow*, Roto Grit's connection to that larger contractual relationship is sufficiently close that holding it to the requirements of the forum selection clause in the March 2019 Agreement does not offend due process. Because the forum selection clause of the March 2019 Agreement operates as waiver of challenges to the jurisdiction of this Court, it is not necessary

---

[2] Based on the terms of the Asset Purchase Agreement, it is not clear what, if anything, is left of the Surface Defendants following Roto Grit's purchase of the companies' assets and assumption of their liabilities.

for the Court to engage in the more conventional personal jurisdiction analysis. Because the Court may properly exercise personal jurisdiction over Roto Grit, the Benson-Surface Defendants' arguments concerning inability to accord relief in the absence of Roto Grit are unavailing.

Roto Grit's Motions to Dismiss for lack of personal jurisdiction are DENIED. By extension, Benson-Surface Defendants' Motions to Dismiss for failure to join a necessary party must also be DENIED.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss, ECF Nos. 21, 24, 35, 36, are DENIED.

It is so ORDERED and DATED this ___23rd___ day of August 2021.

                                        /s/Ann Aiken
                                        ANN AIKEN
                                        United States District Judge