IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **RONALD TRIBBLE**, | Case No. 6:20-cv-00181-IM |
| Plaintiff, | **OPINION AND ORDER DENYING** |
| v. | **DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **SURFACE PREPARATION SYSTEMS INC.**, a Minnesota corporation, **SURFACE LLC**, a Nevada entity, **SURFACE WORLDWIDE LLC**, a Nevada entity, **SURFACE HOLDINGS LLC**, a Nevada entity, **RONALD BENSON**, an individual, **DLS FACTORY CONSULTING LLC**, and **ROTO GRIT LLC**, a Wisconsin LLC, |  |
| Defendants. |  |

**SURFACE PREPARATION SYSTEMS INC.**, a Minnesota corporation, **SURFACE LLC**, a Nevada entity, **SURFACE WORLDWIDE LLC**, a Nevada entity, **SURFACE HOLDINGS LLC**, a Nevada entity, **RONALD BENSON**, an individual, and **ROTO GRIT LLC**, a Wisconsin LLC,

        Counter Claimants,

    v.

**RONALD TRIBBLE**,

        Counter Defendant.

---

**DLS FACTORY CONSULTING LLC**,

        Cross Claimant,

    v.

**SURFACE PREPARATION SYSTEMS INC.**, a Minnesota corporation, **SURFACE LLC**, a Nevada entity, **SURFACE WORLDWIDE LLC**, a Nevada entity, **SURFACE HOLDINGS LLC**, a Nevada entity, **RONALD BENSON,** an individual**,** and **ROTO GRIT LLC**, a Wisconsin LLC,

        Cross Defendants.

---

**DLS FACTORY CONSULTING LLC**,

        Counter Claimant,

    v.

**RONALD TRIBBLE**,

        Counter Defendant.

---

PAGE 2 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Natalie C. Scott, Scott Law Group LLP, P.O. Box 70422, Springfield, OR 97475. Bruce C. Moore, Bruce C. Moore, PC, P.O. Box 11833, Eugene, OR 97440. Attorneys for Plaintiff and Counter Defendant Ronald Tribble.

Michael B. Merchant, Britta E. Warren, and Matthew D. Colley, Black Helterline, LLP, 805 SW Broadway, Suite 1900, Portland, OR 97205-3359. William S. Woodward, von Briesen & Roper, s.c., 300 N. Broadway, Ste 2b, Green Bay, WI 54303. Attorneys for Defendants, Cross Defendants, and Counter Claimants Surface Preparation Systems Inc., Surface LLC, Surface Worldwide LLC, Surface Holdings LLC, and Roto Grit LLC.

Bradley S. Copeland, Arnold Gallagher PC, 800 Willamette Street, Suite 800, Eugene, OR 97401. Attorney for Defendant, Cross Defendant, and Counter Claimant Ronald Benson.

Donald J. Churnside, Hershner Hunter, LLP, 675 Oak Street, Suite 400, Eugene, OR 97401. Attorney for Defendant, Counter Claimant, and Cross Claimant DLS Factory Consulting LLC.

**IMMERGUT, District Judge.**

This matter concerns a dispute over nine contracts and an accusation of fraud. The dispute began with three parties: Plaintiff Ron Tribble, Defendant Ron Benson, and the companies Benson operated on his own, Defendants Surface LLC, Surface Preparation Systems, Surface Worldwide, and Surface Holdings.[1] (When referring to both Defendant Benson and the Surface entities, this Court will call them the "Benson-Surface Defendants.") Between October 2016 and March 2019, Plaintiff and the Benson-Surface Defendants entered into nine agreements—all of which, except the last, were drafted without attorneys. Under the agreements, Plaintiff agreed to fund the Benson-Surface Defendants' efforts to develop a "grit dryer," a machine that could accelerate the process for drying steel grit. As collateral, Plaintiff received a security interest in, among other things, the Benson-Surface Defendants' patents (collectively, "Surface Assets"), and Plaintiff perfected his security through UCC filings in three states. During

---

[1] Defendant Benson and the Surface Defendants are represented by separate counsel here, but when the contracts were drafted, Defendant Benson was President of all four Surface entities and entered into agreements on their behalf.

this period, the Benson-Surface Defendants also gave security in the same collateral to another investor, Defendant DLS Factory Consulting ("DLS"), which perfected its interests after Plaintiff perfected his.

Then, in December 2019, the Benson-Surface Defendants sold the Surface Assets to Defendant Roto Grit LLC. As part of the agreement, Defendant Roto Grit agreed to pay $50,000 to Plaintiff to release his interests in the collateral. Roto Grit argued that this would suffice under a release clause contained in the nine contracts. Plaintiff refused the payment, however, arguing that the provision Roto Grit invoked had been superseded. In Plaintiff's view, moreover, Defendant Roto Grit's acquisition of the Benson-Surface Defendants' assets was fraudulent.

These issues—how to interpret the nine contracts and whether Defendant Roto Grit and the Benson-Surface Defendants engaged in fraud—are now before this Court. As to his security interest, Plaintiff has made eight claims (which this Court numbers as Plaintiff does in his Second Amended Complaint): (1) breach of contract against the Benson-Surface Defendants and Roto Grit; (2) foreclosure of security interest against the Benson-Surface Defendants and Defendants Roto Grit and DLS; (3) breach of fiduciary duty against Defendant Benson; (4) negligent misrepresentation against Defendant Benson; (5) claim and delivery against the Benson-Surface Defendants and Defendant Roto Grit; (6) declaratory relief against Defendants Benson and Roto Grit; (7) constructive trust against Defendant Roto Grit; and (9) conversion against Defendant Roto Grit. Second Amended Complaint ("SAC"), ECF 95 ¶¶ 29–69, 75–78. Further, under Claim (8), Plaintiff has levied two counts of fraudulent transfer against the Benson-Surface Defendants and Roto Grit: actual fraud and constructive fraud. *Id.* ¶¶ 70–74.

The Benson-Surface Defendants and Defendant Roto Grit have responded with three nearly identical counterclaims against Plaintiff: (1) breach of contract/interference with

contractual relations; (2) declaratory relief; and (3) injunctive relief.[2] *See* Roto Grit's Answer to SAC, ECF 97 ¶¶ 82–92; Benson's Answer to SAC, ECF 96 ¶¶ 79–87; Surface's Answer to SAC, ECF 101 ¶¶ 83–91.

Defendant DLS has filed its own cross- and counterclaims: (1) breach of contract/foreclosure against Plaintiff, the Benson-Surface Defendants, and Defendant Roto Grit; (2) fraudulent conveyance against the Benson-Surface Defendants and Defendant Roto Grit;[3] and (3) successor liability against the Benson-Surface Defendants and Defendant Roto Grit. *See* DLS's Answer to SAC, ECF 98 ¶¶ 78–103.

In this Opinion, this Court resolves Plaintiff's and Defendant Roto Grit's cross-motions for summary judgment. Plaintiff has sought partial summary judgment on his first, second, fifth, and sixth claims and every Defendants' counterclaims; he has not sought summary judgment on his fraud claims or claims solely against Defendant Benson.[4] *See* Plaintiff's Corrected Motion for Partial Summary Judgment ("Pl.'s MPSJ"), ECF 127. For its part, Defendant Roto Grit has sought summary judgment on all of Plaintiff's claims except the breach of fiduciary duty and negligent misrepresentation claims solely against Defendant Benson. *See* Defendant Roto Grit's Motion for Summary Judgment ("Roto Grit's MSJ"), ECF 122. In sum, both Parties ask this

---

[2] Earlier in this case, Defendant Roto Grit and the Benson-Surface Defendants filed third-party counterclaims against Defendant DLS, but they did not do so in their latest answers to Plaintiff's Second Amended Complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("[F]or any claims voluntarily dismissed, we will consider those claims to be waived if not repled.").

[3] Defendant DLS's Answer mislabels this claim as going against Plaintiff, but Plaintiff did not participate in the sale of the Surface Assets to Roto Grit.

[4] Though this matters not to this Court's disposition, Plaintiff has limited how much of his first and sixth claims he would like resolved on summary judgment. Plaintiff's Reply Brief, ECF 135 at 3 (seeking only to resolve "non-payment breach and related damages").

Court to resolve their obligations under the nine contracts, and Defendant Roto Grit asks this Court to resolve Plaintiff's fraud claims against him.

This Court DENIES both Defendant Roto Grit's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. There are genuine disputes of fact over the fraudulent transfer counts, so this Court denies summary judgment as to them. Because there are issues of material fact as to whether the December 2019 transaction between the Benson-Surface Defendants and Defendant Roto Grit was fraudulent and voidable, there are necessarily issues of material fact over whether the December 2019 transaction could validly release Plaintiff's security interest in the Surface Assets. Therefore, at the summary judgment stage, this Court cannot resolve whether Plaintiff continues to retain a valid security interest in the Surface Assets under the nine agreements. Finally, this Court concludes that Defendant Roto Grit can be held liable for the Benson-Surface Defendants' alleged breach of the nine agreements, though how much liability Defendant Roto Grit has assumed must ultimately be determined at trial. In sum, all claims, counterclaims, and crossclaims must be resolved at trial.

## BACKGROUND

**A. The Nine Agreements Between Plaintiff and the Benson-Surface Defendants**

1.      On October 11, 2016, Plaintiff and Defendant Benson (as President of Surface Preparation Systems) entered an agreement titled "Stage II Grit Dryer Loan Agreement," ECF 125, Ex. 2 at 1. The Stage II Agreement provided that Plaintiff was to lend $300,000 to Defendant Benson to "fund the manufacturing of the grit dryer and purchase of a motorhome/trailer." *Id.* The loan was to be "repaid from rental revenue from a first GD1K-T SURFACE grit dryer," with interest paid at "10% per annum from the date of [the] agreement to the date the loan [was] paid back in full." *Id.* The Stage II Agreement also listed "Security" for

Plaintiff. *Id.* at 2. That security included: a "UCC-1 Security Agreement filing in any applicable state on one SURFACE Worldwide GD1K-T grit dryer including all parts and final product as it is being built"; a "UCC-1 Security Agreement filing in any applicable state on a motorhome and trailer combination" registered to a corporation owned solely by Defendant Benson; a "right to rent and/or sell the grit dryer in collaboration with DLS Factory Consulting, LLC if" the principal was not paid back within a specified period; and a "license under all applicable intellectual property, including patents, trademarks, and copyrights." *Id.* The Stage II Agreement listed Defendant DLS as second in priority and Plaintiff as third. *Id.* Plaintiff was to receive 1.5% of any "Net Exit Sale Compensation." *Id.* at 3.

2.      A month later, on November 25, 2016, Plaintiff and Defendant Benson (as President of Surface Worldwide) entered into another, one-page agreement. *See* ECF 125, Ex. 3. This document "acknowledge[d] the existence" of the Stage II Agreement and that Plaintiff had thus far furnished $150,000 of the promised $300,000 to Defendant Benson. *Id.* Under this second agreement, Plaintiff would "immediately wire" $75,000 to Defendant Surface LLC to buy parts for the roto grit dryer. *Id.* This agreement also confirmed that Plaintiff had a security interest in two vehicles, a 2005 Kenworth and a 1994 Wildside Trailer. *Id.*

3.      Next, on March 14, 2017, Plaintiff and Defendant Benson (as President of Surface LLC) entered a third agreement titled "Surface, LLC Investment Amended Agreement," ECF 125, Ex. 4 at 1. The Amended Agreement "acknowledge[d] the existence of the" Stage II Agreement and that Plaintiff had disbursed $225,000 to Defendant Benson. *Id.* Plaintiff agreed to provide the remaining $75,000 promised in the Stage II Agreement. *Id.* Plaintiff also agreed to lend another $50,000 to Defendant Benson "for the completion of the Grit Dryer." *Id.* Plaintiff and Defendant Benson agreed that the Stage II Agreement "describe[d] the security interests for

this combined loan" of $350,000. *Id.* Plaintiff's share of "Net Exit Sale Compensation" increased from 1.5% to 1.75%. *Id.*

4.      That same day, Plaintiff and Defendant Benson (as President of Surface LLC) agreed to an Addendum to the Amended Agreement, ECF 125, Ex. 4 at 3.[5] The Addendum expressly did "not alter [the] structure" of the prior loan agreements. *Id.* It provided that: "[T]he amount of . . . distribution of Net Sale Proceeds or any other liquidating distribution to Member Ronald Tribble shall not be less than seven hundred fifty thousand dollars ($750,000)." *Id.*

5.      Two months later, on May 16, 2017, Plaintiff and Defendant Benson (as President of Surface LLC) entered into a fifth agreement titled "Continuation for Funding of Surface LLC," ("Continuation Agreement"), ECF 125, Ex. 5 at 1. The Continuation Agreement "acknowledge[d] and accept[ed] all prior agreements signed by Ron Benson[,] President of Surface LLC[,] and Ron Tribble[,] the Lender Investor." *Id.* The Continuation Agreement also acknowledged that Plaintiff had disbursed $300,000 up to that point and that "[a]ll stipulations, requirements and security interests remain in place from prior agreements." *Id.* Plaintiff agreed to open a $100,000 line of credit at 12% interest to Surface LLC so that it could "pay bills that are directly related to the development and construction of the first Surface Roto Grit Dryer." *Id.* And the Continuation Agreement established a board "consisting of Ron Tribble, David Stickle [the owner of Defendant DLS], Gary Solomon and Ron Benson."[6] *Id.* Finally, "[t]he minimum

---

[5] Plaintiff views the March 2017 Amended Agreement and Addendum as a single legal document, which explains why Plaintiff says there were eight agreements total. Pl.'s MPSJ, ECF 127 at 11 n.3.

[6] Gary Solomon was a patent attorney for the Surface Defendants who now works for Defendant Roto Grit following Roto Grit's acquisition of the Surface Assets. *See* Deposition of Gary Solomon ("Solomon Depo."), ECF 126, Ex. 28 at 2–3 (14:7–16, 18:22–25).

PAGE 8 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

guaranteed payment upon sale of the company [was] increased from $750,000.00 to

$1,000,000.00," *id.* at 2, and "[t]he percentage of Surface LLC owned by Ron Tribble [was]

increased from 1.5% to 2.5%," *id.* at 1.

6.      Four months later, on September 24, 2017, Plaintiff and Defendant Benson (as

President of Surface LLC) entered into their sixth agreement: "Surface LLC Amended

Agreement for Additional Funding" ("Additional Funding Agreement"), ECF 125, Ex. 6 at 1.

The Additional Funding Agreement observed that "[a]s of August 28, 2017, the full $100,000

[credit] ha[d] been dispersed." *Id.* Plaintiff agreed to lend another $100,000 at 10% interest to

Defendant Benson "to complete the first Surface Roto Grit Dryer." *Id.* at 2. The combined

$500,000 loan and the interest accrued would be due to Plaintiff by June 1, 2018. *Id.* The

Additional Funding Agreement acknowledged the prior Stage II Agreement. *Id.* at 1–2. The

Additional Funding Agreement also provided that "a new UCC-1 Security Agreement filing

[would] be made for the second Surface Roto Grit Dryer when complete, unless Ron Tribble has

been paid in full under each of the loan agreements prior to completion of the second dryer," *id.*

at 1. Plaintiff's share of "Net Exit Sale Compensation" increased from 2.5% "to a greater

percentage in proportion to whatever funds are drawn up to the $100,000 based on a $20,000,000

valuation of Net Exit Sale Proceeds." *Id.* at 2. Finally, the Additional Funding Agreement stated:

"The Minimum Guaranteed Distribution (MGD) from either Net Exit Sale Proceeds or any other

liquidation event will be increased from $1,250,000.00 to $2,000,000.00." *Id.* at 3.

7.      On March 9, 2018, Plaintiff and Defendant Benson (as President of Surface LLC)

entered into another agreement titled "Addendum to Continuation for Funding of Surface LLC"

("Continuation Addendum"), ECF 125, Ex. 7 at 1. The Continuation Addendum included the

following provision, which is at the heart of this case:

PAGE 9 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**LIQUIDATION EVENT PRIOR TO COMPLETION OF SURFACE ROTO GRIT DRYER #1**

> In the event that the company is liquidated prior to completion of the Surface Roto Grit Dryer #1, sale value of the intellectual property shall be initially paid to Ron Tribble up to the $50,000 amount. Remaining sale value of the intellectual property shall be distributed proportionally to the investors.

*Id.* (This Court will refer to this paragraph as the "Liquidation Clause.") The Continuation Addendum listed an "Intellectual Property Schedule"—describing three trademarks, three patents, two patent applications, and various "Know-How"—in which Plaintiff had a security interest. *Id.* at 2.

      **8.**     About a year later, on February 19, 2019, Plaintiff and Defendant Benson (as President of Surface LLC) agreed to a "Term Sheet Restructuring of Tribble Surface Agreement," ECF 125, Ex. 8 at 1. The Term Sheet states that Surface LLC's then "valuation [was] $20 [million] based on future earnings." *Id.* The Term Sheet provided for the creation of a board overseeing Surface LLC, with the board "made up of" Ron Tribble, Ron Benson, and David Stickle. *Id.* The Term Sheet also converted Plaintiff's loans into "6% of the net exit sale proceeds of" Surface LLC, but expressly reserved that "IP, patents, know how etc. that is held as security for loan to continue as security for investment." *Id.* at 2. The Term Sheet includes the following key provision (what this Court will refer to as the "Release Clause"):

> The IP, patents, know how, etc. to be released at the point in time that Surface has applied for a commercial loan and the Bank is requiring it for collateral or until a commercial loan is secured.

*Id.* at 2. The Term Sheet provided that it "supersede[d] all previous agreements." *Id.* at 3.

      **9.**     On March 19, 2019, Plaintiff and Defendant Benson (as President of Surface LLC, Surface Holdings, Surface Worldwide, and Surface Preparation Systems) entered their final agreement titled "Loan Agreement Modification," ECF 125, Ex. 1 at 1. "The Parties

agree[d] that no prior documents or agreements have been superseded." *Id.* "Notwithstanding

any provision of any such prior agreement or document and except as expressly modified

herein," the Modification continued, "all terms of such prior documents or agreements continue

in full force and effect." *Id.* Defendant Benson's deadline for paying back the loans was

"extended to April 18, 2019." *Id.* The Parties agreed to the "exclusive jurisdiction of the courts in

Oregon." *Id.* at 2. The Modification affirmed Plaintiff's security interest in:

> [A]ny and all Grit Dryers and all parts and product of any such
> Grit Dryer as it is being built (and specific Grit Dryers upon
> completion of additional machines per Addendums), the
> motorhome currently registered in Montana, a trailer registered to
> Borrowers, and general intangibles, including the right to rent or
> sell the grit dryer and all intellectual property including US Patent
> 8,920,210, US Patent 9,058,707, US Patent 9,592,587, Patent
> Applications 20170297169 and 20160016289 regarding systems
> and methods pertaining to drying grit used for abrasive blasting
> and managing and maintaining abrasive blasting machines, know-
> how in CAD drawings for the Roto Grit Dryer # 1 and trademarks
> for SURF ACE, Roto Grit Dryer, and Fast-Pass.

*Id.* Then, from March 19 to 22, 2019, Plaintiff filed UCC-1 financing statements in Iowa,

Nevada, and Minnesota, as well as an assignment with the U.S. Patent Office.[7] ECF 125, Ex. 9.

## B.  Events Leading to the Formation of Defendant Roto Grit

Defendant did not pay back the loan on April 18, 2019. Deposition of Ron Benson

("Benson Depo."), ECF 126, Ex. 27 at 19 (151:7–18). Four days later, Plaintiff sent a default

notice to the Benson-Surface Defendants demanding payment or the tender of collateral. ECF

125, Ex. 10. Thereafter, Plaintiff, Defendant Benson, and Attorney Solomon devoted several

---

[7] Defendant DLS filed its own UCC-1 financing statements in Iowa, Minnesota, and
Nevada on October 24, 2019. *See* ECF 98, Ex. D.

months to securing another third-party investor. Declaration of Ron Tribble ("Tribble Decl."), ECF 125 ¶ 14.

While these discussions were happening, in May 2019, Defendant Benson and Attorney Solomon began talking to an investor named Dale Roberts without informing Plaintiff.[8] Benson Depo., ECF 133, Ex. 33 at 6 (105:10–12). There is a dearth of clear evidence on what precisely occurred between May and August 2019.[9] On August 30, 2019, Defendant Benson assigned all of the patents to the roto grit dryer to Defendant Surface Holdings LLC. ECF 126, Ex. 15. All this was done without Plaintiff's knowledge. Tribble Decl., ECF 125 ¶ 15; Second Declaration of Ron Tribble ("Second Tribble Decl."), ECF 132 ¶ 5. Emails show that Defendant Benson and Attorney Solomon were in contact with Mr. Roberts and his attorney William Woodward in August 2019, discussing the amount owed to Plaintiff by Defendant Benson. ECF 126, Ex. 16 at 1. But it was not until September 2019 that Attorney Solomon first told Plaintiff that Mr. Roberts and his investor group, SI Group, had an interest in investing in the roto grit dryer.[10] Second Tribble Decl., ECF 132 ¶ 5.

Next, negotiations began between Plaintiff, Defendant Benson, Attorney Solomon, Attorney Woodward (who is Roto Grit's counsel here), Mr. Roberts, and SI Group. ECF 126, Ex. 17. These parties ostensibly contemplated a new Surface Holdings LLC entity (not to be

---

[8] Mr. Roberts and his investor group SI Group are not parties here.

[9] Some evidence shows that on May 27, 2019, the Benson-Surface Defendants executed a promissory note with Mr. Roberts lending $10,000 to Defendant Benson in his capacity as President of Surface Holdings. ECF 133, Ex. 30 at 1. This promissory note refers to a preexisting "Investment Agreement." *Id*. Yet other promissory notes seemingly refer to this promissory note as the September 30, 2019 promissory note. *See* ECF 140, Ex. 22 at 3–4.

[10] Plaintiff states in his Motion for Partial Summary Judgment that he did not learn of Dale Roberts until October 2019, Pl.'s MPSJ, ECF 127 at 14, but his declarations contradict this.

PAGE 12 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

confused with the existing one) in which SI Group would be a member alongside Plaintiff, Defendant Benson, and Defendant DLS. ECF 126, Ex. 18. These negotiations ultimately failed.

While those negotiations were ongoing, Defendant Benson and Mr. Roberts, through Attorney Woodward, continued to discuss a deal without Plaintiff's involvement. *See, e.g.*, ECF 133, Ex. 32. On October 23, 2019, Defendant Benson sent an email to Attorney Woodward titled "Contacting Tribble," in which Defendant Benson wrote he was "very thankful [Attorney Woodward and Mr. Roberts] now understand the pain and cost [Plaintiff Tribble] has inflicted on the whole team. We look forward to hearing the strategy you feel makes the most sense to rid us of him." ECF 140, Ex. 18. Then, on November 7, 2019, Defendant Benson emailed Attorney Woodward about having additional assets concerning "steel grit recycling machines" combined with the Surface Assets held by Surface Holdings, LLC and told Attorney Woodward to "determine," with Attorney Solomon, "how best to legally handle this asset sale/purchase." ECF 140, Ex. 19 at 1–2. Attorney Woodward responded: "Are you saying that Holdings needs to pay something to Surface Preparation for these assets? If so, how much?" *Id.* at 1.[11] Less than a month later, on November 20, 2019, SI Group (through Mr. Roberts) and Defendant Benson signed a "Letter of Intent . . . [for SI] to acquire substantially all of the assets of Surface Holdings, LLC, a Nevada limited liability company." ECF 126, Ex. 19 at 1. Plaintiff did not know about this letter of intent nor about these backdoor negotiations until discovery. Tribble Decl., ECF 125 ¶ 16. On November 20, 2019, Mr. Roberts loaned another $73,000 to Defendant Benson in his capacity as President of Surface Holdings. ECF 133, Ex. 30 at 2. Two days later, Plaintiff's counsel issued a final demand for payment in full to Defendant Benson. ECF 125, Ex.

---

[11] Although the two emails attached as exhibits to ECF 140 were not discussed in the Parties' summary judgment briefing, this Court may consider them. Fed. R. Civ. P. 56(c)(3).

11. On the same day, Mr. Roberts registered a new entity, Defendant Roto Grit LLC, in the State of Wisconsin, ECF 126, Ex. 20. Plaintiff did not know about Defendant Roto Grit until late December 2019. Tribble Decl., ECF 125 ¶ 18.

On December 4, 2019, Mr. Roberts loaned Defendant Benson, in his capacity as President of Surface Holdings, another $15,000. ECF 133, Ex. 30 at 3. The next day, Attorney Solomon sent an email demanding that Plaintiff release his lien in the Surface LLC assets. ECF 126, Ex. 21 at 4. Attorney Solomon attached a letter from Associated Bank opening a line of credit to Surface Holdings, LLC, which listed Mr. Roberts as a guarantor. *Id.* at 6–8. Attorney Solomon argued that because the loan was secured through a "1st lien on all business assets of Surface Holdings, LLC"—i.e., the intellectual property and vehicles—Plaintiff's security interest was terminated under the February 19, 2019 Term Sheet. *Id.* at 4, 6–8. Plaintiff has not released its security interest and has never heard from Associated Bank. Tribble Decl., ECF 125 ¶ 17.

On December 6, 2023, Plaintiff began this suit against the Benson-Surface Defendants in Lane County Circuit Court, Oregon. ECF 126, Ex. 22.

On December 18, 2019—twelve days after Plaintiff began this case in Oregon state court—Defendant Benson (as President of Surface LLC, Surface Holdings, and Surface Worldwide) executed an Asset Purchase Agreement with Defendant Roto Grit. *See* Asset Purchase Agreement ("APA"), ECF 125, Ex. 12. Under the APA, Defendant Roto Grit bought "all of [the Benson-Surface Defendants'] right, title and interest in the assets set forth on Schedule 1.01 of the disclosure schedules," *id.* § 1.01, which in turn includes the intellectual property in which Plaintiff had a security interest, *id.* at 20. The APA also set aside $50,000 for payment to Plaintiff in exchange for the termination of his interest in the intellectual property:

> [Roto Grit] shall pay [$50,000] . . . to [the Benson-Surface Defendants] at the Closing . . . to be paid to Ronald Tribble in

> accordance with the terms of the Addendum to Continuation for
> Funding of Surface, LLC-May 16, 2017 which provides: "In the
> event that [the] company is liquidated prior to completion of the
> Surface Roto Grit Dryer #1, sale value of the intellectual property
> shall be initially paid to Ron Tribble up to $50,000 amount.
> Remaining sale value of the intellectual property shall be
> distributed proportionately to the investors."

*Id.* § 1.04. The APA assumed up to $650,000 of the Benson-Surface Defendants' liabilities to

Plaintiff. *Id.* § 1.03. The APA permitted Defendant Benson to retain his "personal property not

contributed to or used by any Surface entity." *Id.* at 2, 22.

Neither Plaintiff nor Defendant DLS were informed about the sale of the Surface Assets

to Defendant Roto Grit—despite that both Plaintiff and DLS were board members of Surface

LLC.[12] *See* Tribble Decl., ECF 125 ¶¶ 18–19; Solomon Depo., ECF 126, Ex. 28 at 9 (87:14–17);

Benson Depo., ECF 126, Ex. 27 at 6–7 (38:23–39:1). As is undisputed, Plaintiff has refused the

$50,000 and refused to release his UCC-1s.

Plaintiff alleges that Defendant Benson owes him $826,820.00 (as well as interest),

Tribble Decl., ECF 125 ¶ 21. The Benson-Surface Defendants have not "pa[id] any sum towards

the amounts owed." Benson Depo., ECF 126, Ex. 27 at 19 (151:10–12). Defendant Benson is a

fifteen percent minority shareholder in Defendant Roto Grit, was the inaugural President of

Defendant Roto Grit, and has continued to develop the roto grit dryer. *See* Benson Depo., ECF

126, Ex. 27 at 9, 17 (75:7–11, 141:14–16); Deposition of Dale Roberts ("Roberts Depo."), ECF

126, Ex. 29 at 2 (14:15–23); ECF 126, Ex. 25 at 64–65. Defendant Benson stated at oral

argument that he owned more equity in Defendant Roto Grit at the time the APA went into

effect. ECF 150. Attorney Solomon does patent work for Defendant Roto Grit. Solomon Depo.,

---

[12] To be sure, all Parties agree that no formal operating agreement delineating the
privileges and responsibilities of the Board under the nine agreements ever went into effect.

PAGE 15 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ECF 126, Ex. 28 at 2–3 (14:7–16, 18:22–25). Defendants Surface Preparation Systems and Surface LLC remain active today, according to Defendant Benson. *See* Declaration of Ronald Benson ("Benson Decl."), ECF 130-1 ¶¶ 2–3.

## C. Procedural Background

This case was removed to the United States District Court for the District of Oregon on January 31, 2020 and initially assigned to the Honorable Ann Aiken. Notice of Removal, ECF 1. At first, Plaintiff did not name Roto Grit as a Defendant, but eventually did in his First Amended Complaint. ECF 13.

Defendants filed several motions to dismiss, primarily arguing that the U.S. District Court for the District of Oregon lacked jurisdiction over Defendant Roto Grit. Opinion and Order Denying Motions to Dismiss ("MTD Op."), ECF 61 at 11 (Aiken, J.); *see* ECF 21, 24, 35, 36. Defendants asserted that Defendant Roto Grit was not bound to the forum selection clause contained in the Parties' final agreement from March 2019. MTD Op., ECF 61 at 11. During the sixteen months that the motions to dismiss and a subsequent motion to certify interlocutory appeal were pending before Judge Aiken, no discovery was exchanged between the Parties. *See* ECF 27, 29, 44, 49, 51, 53, 54, 59; *see also* ECF 146 at 9–10.

Judge Aiken ultimately denied the motions to dismiss. Judge Aiken held that Defendant Roto Grit "made itself 'part of the larger contractual relationship' existing between Plaintiff and the Benson-Surface Defendants." MTD Op., ECF 61 at 14. The court concluded that: the APA transferred the assets of the Benson-Surface Defendants to Defendant Roto Grit; Roto Grit made plain in the APA that it understood the terms of the nine agreements and was aware of Plaintiff's suit against the Benson-Surface Defendants; Roto Grit, alongside Defendant Benson, is using the assets it acquired to continue development of the dryer that Plaintiff originally funded; and in the

APA, Roto Grit essentially assumed the debts that the Benson-Surface Defendants owed to Plaintiff. *Id.* Defendant Roto Grit requested that Judge Aiken certify an interlocutory appeal and issue a stay pending appeal, ECF 64, but Judge Aiken denied this request. ECF 68.

Plaintiff and Defendant Roto Grit have had several discovery disputes stemming from Defendant's refusal to produce certain documents. On September 28, 2022, Judge Aiken again ordered Defendant Roto Grit to produce relevant documents to Plaintiff. ECF 93. Next, on March 29, 2023, Plaintiff moved to compel Defendant Roto Grit to produce further relevant documents, ECF 109, and on the record in a June 5, 2023 hearing, Judge Aiken granted, denied, and reserved various portions of the Motion to Compel, ECF 117. Defendant Roto Grit failed to comply with Judge Aiken's ruling, however, prompting Plaintiff to move to enforce Judge Aiken's ruling on June 27, 2023, ECF 120.

This matter was reassigned from Judge Aiken to this Court on June 21, 2023. ECF 119. After this Court received the case, Plaintiff filed the Motion to Enforce, and Plaintiff and Defendant Roto Grit filed their cross-motions for summary judgment. The Motions to Compel and Enforce were still pending when the summary judgment briefing was completed. Consistent with Judge Aiken's prior rulings, this Court largely granted Plaintiff's discovery motions on the record at a September 13, 2023 hearing. ECF 136. This Court also ordered Plaintiff, with Defendants' cooperation, to submit a draft order for this Court to issue. *Id*. This Court entered the written order on September 18, 2023, which ordered Defendant Roto Grit to produce unprivileged emails, financial documents substantiating tax returns, and copies of documents reflecting payment to third parties, including Attorney Solomon. ECF 137. At the same time, this Court reserved ruling on any sanctions against Defendant Roto Grit with leave for Plaintiff to

renew. ECF 136. Plaintiff filed a Motion for Sanctions against Defendant Roto Grit on

November 9, 2023. Plaintiff's Sanctions Motion, ECF 139.

This Court has ruled on the Motion for Sanctions, awarding $9,473.00 in attorney's fees

and costs to Plaintiff. ECF 151. This Court now rules on Plaintiff's and Defendant Roto Grit's

cross-motions for summary judgment.

## LEGAL STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the

evidence in the light most favorable to the non-movant and draw all reasonable inferences in the

non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1257 (9th Cir.

2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a

motion for summary judgment," the "mere existence of a scintilla of evidence in support of the

[non-movant's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each

motion separately, giving the nonmoving party in each instance the benefit of all reasonable

inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006)

(quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665,

PAGE 18 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (citation omitted).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). The non-moving party then bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* (citation omitted). "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

## DISCUSSION

This Opinion proceeds as follows. Part A denies summary judgment to Defendant Roto Grit on Plaintiff's fraudulent transfer claim because there are disputed issues of material fact as to key elements of that claim. Part B denies summary judgment to both Defendant Roto Grit and Plaintiff as to the breach-of-contract-related claims and counterclaims because there are genuine issues of material fact as to whether the Liquidation Clause was triggered. Further, the Release Clause is inapplicable here because the agreement containing the Clause was signed by a party (Defendant Surface LLC) other than the one that attempted to trigger it (Defendant Surface Holdings). Part C holds that Defendant Roto Grit assumed at least $650,000 in liability for the Benson-Surface Defendants' alleged breach of the nine agreements. In short, this Court denies in full both Plaintiff's and Defendant Roto Grit's motions for summary judgment.

PAGE 19 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## A.  The Fraud Counts

In his Complaint, Plaintiff's eighth claim of fraudulent transfer under the Uniform Fraudulent Transfer Act ("UFTA"), O.R.S. 95.200–310, accuses Defendants Roto Grit and the Benson-Surface Defendants of actual fraud and constructive fraud. SAC, ECF 95 ¶¶ 70–74. The UFTA "permits a creditor to collect a debt when the debtor has tried to strip itself of assets that the creditor could have applied for that purpose." *Jakobitz v. Iron Horse Bus. Servs., LLC*, 208 Or. App. 515, 522 (2006).[13] Defendant Roto Grit maintains that Plaintiff lacks evidence to prove his fraudulent transfer counts at trial. Roto Grit's MSJ, ECF 122 at 31–36. Plaintiff has responded by identifying relevant evidence uncovered during discovery. Pl.'s Resp., ECF 131 at 24–27.

This Court agrees with Plaintiff that there are genuine issues of material fact that must be resolved at trial. The sections below address each fraud count in turn.

### 1.  There Are Disputed Issues of Material Fact as to Whether Defendant Roto Grit Committed Actual Fraud

Under O.R.S. 95.230(1)(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." To prove "actual intent," Plaintiff must present evidence on whether:

> (a)     The transfer or obligation was to an insider;
>
> (b)     The debtor had retained possession or control of the property transferred after the transfer;

---

[13] On January 1, 2024, revisions to the UFTA will go into effect, and the statute will be renamed the Voidable Transactions Act. *See* 2023 Or. Laws. Ch. 83.

      (c)      The transfer or obligation was disclosed or concealed;

      (d)      Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;

      (e)      The transfer was of substantially all the debtor's assets;

      (f)      The debtor had absconded;

      (g)      The debtor had removed or concealed assets;

      (h)      The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

      (i)      The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

      (j)      The transfer had occurred shortly before or shortly after a substantial debt was incurred; and

      (k)      The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

O.R.S. 95.230(2). These factors are not exclusive. *Id.*

Defendant Roto Grit argues that it is entitled to summary judgment because (i) Plaintiff was paid $50,000 to release his interest in the Surface Assets, (ii) Roto Grit provided $700,000 ($50,000 to Plaintiff and the assumption of $650,000 in debt) in consideration for the Surface Assets, and (iii) there were negotiations between Dale Roberts and Plaintiff before the creation of Roto Grit. Roto Grit's MSJ, ECF 122 at 31–35.

As Plaintiff points out, however, the record contains other evidence, unrebutted by Defendant, that could prove Defendant's actual intent to commit fraud. Organized according to the relevant O.R.S. 95.230(2) factors, and viewed in the light most favorable to the non-movant Plaintiff, the allegations are:

First, (a) *the transfer or obligation was to an insider*, and (b) *the debtor had retained possession or control of the property transferred*. Defendant Benson was the inaugural President of Defendant Roto Grit, continues to work on the roto grit dryer, and holds equity in Defendant Roto Grit under an incentive agreement. *See* Benson Depo., ECF 126, Ex. 27 at 9, 17 (75:7–11. 141:14–16); Roberts Depo., Ex. 29 at 2 (14:15–23); ECF 126, Ex. 25 at 64–65; ECF 126, Ex. 26; *see also* O.R.S. 95.200(7)(a)(D) (defining an "insider" as "[a] corporation of which the debtor is a director, officer or person in control," if the debtor is an individual).

Second, (c) *the transfer or obligation was disclosed or concealed*. From May to September 2019, Defendant Benson, Attorney Solomon, Attorney Woodward, and Mr. Roberts discussed the potential transfer of the Surface Assets, negotiated a $10,000 loan from Mr. Roberts to Defendant Benson, and formed an "Investor Agreement"—all without Plaintiff's knowledge. *See supra* at 12 & n.9. And even after Plaintiff learned of Mr. Roberts, negotiations continued without Plaintiff. *See supra* at 13–15. Defendant Benson (as President of Surface Holdings) acquired a loan from Associated Bank with Mr. Roberts as his guarantor and an additional $88,000 in loans directly from Mr. Roberts—again, all without Plaintiff's knowledge. Nor did Plaintiff know about the creation of Roto Grit (which was established in November 2019) until late December 2019.

Third, (g) *the debtor had removed or concealed assets*. Defendant Benson first transferred all of the grit dryer IP from Surface LLC to Surface Holdings in August 2019. ECF 126, Ex. 15. Then, in early November 2019, Defendant Benson discussed further transferring assets from Surface Preparation Systems to Surface Holdings. *See supra* at 13. And then in late November 2019, Defendant Benson acquired a loan from Associated Bank, which was secured by the roto grit dryer intellectual property. None of this was done with Plaintiff's knowledge.

PAGE 22 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Fourth, (d) *before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit*, and (j) *the transfer had occurred shortly before or shortly after a substantial debt was incurred*. The Benson-Surface Defendants were sued just twelve days before Defendant Roto Grit acquired all of the Surface Assets. *See supra* at 14. Defendant Benson had been in default to Plaintiff since April 2019. Benson Depo, ECF 126, Ex. 27 at 19 (151:7–18).

Fifth, (e) *the transfer was of substantially all the debtor's assets*. Defendant Roto Grit acquired most of the Benson-Surface Defenants' assets, most notably the IP. (Though, to be certain, how many of the assets the Surface Defendants still retain and whether the Surface Defendants continue to do business in good standing is an open question, *see infra* at 32).

Sixth, (f) *the debtor had absconded*. Defendant Benson avoided service from Plaintiff by moving his motorhome. *See* ECF 132 ¶ 2. Indeed, Defendant Benson openly showed animosity toward Plaintiff, stating, "I hate and distrust Tribble," ECF 133, Ex. 32 at 42, and telling Attorney Woodward that he "look[ed] forward to hearing the strategy you [Attorney Woodward] feel makes the most sense to rid us of him [Plaintiff Tribble]," ECF 140, Ex. 18.

Seventh, (i) *the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred*. In April 2019, Defendant Benson defaulted on his approximately $600,000 debt to Plaintiff and, soon after in May 2019, began talking to Mr. Roberts. *See supra* at 11–12. Thus, the negotiations leading to the Roto Grit APA began after Defendant Benson was effectively insolvent.

Defendant Roto Grit does not meaningfully contest the veracity of this evidence; rather, it notes that some allegations must be fleshed out through credibility findings by the jury, a point with which this Court agrees. *See* ECF 146 at 34. As a result, there are substantial disputes of

PAGE 23 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

material fact on Defendants' actual intent in entering the APA. This Court therefore denies

Defendant Roto Grit's Motion for Summary Judgment as to Plaintiff's count of Actual Fraud.

*See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("[I]f the

nonmoving party produces enough evidence to create a genuine issue of material fact, the

nonmoving party defeats the motion." (citation omitted)).

### 2. There Are Disputed Issues of Material Fact as to Whether Defendant Roto Grit Committed Constructive Fraud

For Plaintiff to prove "Constructive Fraud," he must show by a preponderance of

evidence that Defendant Benson entered the APA "[w]ithout receiving a reasonably equivalent

value in exchange for the transfer . . . , and . . . (A) [w]as engaged or was about to engage in a

business or a transaction for which the remaining assets . . . were unreasonably small in relation

to the business or transaction; or (B) [i]ntended to incur, or believed or reasonably should have

believed that [he] would incur, debts beyond [his] ability to pay as they become due." O.R.S.

95.230(1)(b).

There is a genuine dispute of material fact as to whether Defendant Benson received a

"reasonably equivalent value" in the APA for the Surface Assets. To start, Defendant Roto Grit

contends that $700,000 is reasonably equivalent to the value of the Surface Assets, *see* Roto

Grit's MSJ, ECF 122 at 36. But the nine agreements value the Surface Assets as being worth

$20,000,000, ECF 125, Ex. 8 at 1–2, Defendant Benson has testified that, after the APA, Mr.

Roberts valued Roto Grit "in the range of $5.5 million," ECF 133, Ex. 33 at 12 (188:5–14),

Plaintiff believes the Surface Assets to be worth "well in excess of $1 million," ECF 132 ¶ 4, and

SI Group has contributed over $1 million to Defendant Roto Grit, according to Defendant Roto

Grit's counsel at oral argument. Doubtless, the value of the Surface Assets is a significant

dispute of material fact.

PAGE 24 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

\*    \*    \*

In total, there are disputed issues of material fact for Plaintiff's fraud counts. A trial ruling in Plaintiff's favor on the fraud counts could result in the "[a]voidance of the" APA "to the extent necessary to satisfy" Plaintiff's alleged claim. O.R.S. 95.260(1)(a).

## B.  The Breach-of-Contract-Related Claims

For the Parties' array of breach-of-contract-related claims, Plaintiff's and Defendant Roto Grit's cross-motions largely boil down to two disputes of contract interpretation: whether the Liquidation and Release Clauses remain valid, and, if so, whether the conditions listed in those Clauses have been met here. Oregon substantive law governs these questions, as this matter falls under this Court's diversity jurisdiction. *See Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008).

In Oregon, courts follow three steps to interpret contracts, with an eye toward capturing "the mutual intent of the parties as it existed at the time of contracting." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1165 (9th Cir. 2015) (citations and emphasis omitted); *see Yogman v. Parrott*, 325 Or. 358, 361 (1997) (Graber, J.). To start, the court must determine, as a matter of law, whether the disputed provision is ambiguous. *Yogman*, 325 Or. at 361 (consulting dictionaries to interpret contractual terms). A contractual provision is ambiguous if it can "reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011) (citation omitted). "The court must, if possible, construe the contract so as to give effect to all of its provisions." *Id.* (citation omitted). And the court cannot "insert what has been omitted" nor "omit what has been inserted." O.R.S. 42.230; *see Yogman*, 325 Or. at 361. If the provision's meaning is "clear from the text and context of the contract," then the court "applies the

contractual term to the facts." *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016) (first citing *Williams*, 351 Or. at 379–80; and then citing *Yogman*, 325 Or. at 361). If the provision is ambiguous, however, then the court must consider extrinsic evidence of the contracting parties' intent and construe the contract in accord with that intent. *Yogman*, 325 Or. at 363–64. If the contract is still ambiguous after an examination of relevant extrinsic evidence, then as a last resort the court applies maxims of construction. *Id.* at 364–65.

Applying these principles, this Court holds that: the Release and Liquidation Clauses remain in force, the Release Clause was not triggered, and there are disputed issues of material fact as to whether the Liquidation Clause was triggered. This Court therefore denies both Plaintiff and Defendant Roto Grit's Motions for Summary Judgment. The sections below (1) interpret and apply the contracts and then (2) rule on the summary judgment motions.

### 1. Interpreting and Applying the Contracts

#### a. The Liquidation and Release Clauses Were Not Superseded

Plaintiff begins with a threshold argument, contending that the last of the nine agreements, March 2019 Loan Modification Agreement (which was signed by Plaintiff and Defendant Benson as the President of all four Surface Defendants), superseded the Liquidation and Release Clauses. Pl.'s MPSJ, ECF 127 at 23–25. Defendant Roto Grit responds that the Modification Agreement had no such effect. Roto Grit's Response to Plaintiff's MPSJ ("Roto Grit's Resp."), ECF 129 at 10, 13. The key provision states:

> **Obligors; Effectiveness of Prior Agreements**. The parties hereby agree that Surface Preparation Systems, Inc.; Surface, LLC; Surface Worldwide, LLC; Surface Holdings, LLC; and Ronald Benson are jointly and severally liable to pay all sums due to Lender under the Loan Agreement and Addendums. The Parties agree that no prior documents or agreements have been superseded. Notwithstanding any provision of any such prior agreement or document and except as expressly modified herein,

PAGE 26 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

> all terms of such prior documents or agreements continue in full
> force and effect.

ECF 125, Ex. 1 at 1 (underlining added).

This Court agrees with Defendant's reading. The underlined portion sets forth two rules. First, it establishes a baseline: "all terms" contained in "prior documents or agreements continue in full force and effect." Then, it establishes a carve-out to this baseline: past agreements do not "continue in force and effect" if they are "expressly modified" in the March 2019 Loan Modification Agreement.

The key word here is "expressly," which means that a message must be "[c]learly and unmistakably communicated; stated with directness and clarity." *Express*, Black's Law Dictionary (11th ed. 2019) ("Black's"); *see also Express*, adj., adv. & noun, Oxford English Dictionary (3d ed.) ("Of a meaning, rule, etc.: clearly and unambiguously stated; explicit. Of written or spoken language: formulated in clear and distinct terms; unmistakable in meaning."). Under the terms of the Loan Modification Agreement, a past agreement can be superseded only if there is an unmistakable modification of that past agreement's terms.

No such term can be found in the Loan Modification Agreement with regard to the Release and Liquidation Clauses. Plaintiff argues that the Loan Modification Agreement "expressly modified" the Liquidation and Release Clauses because the Agreement "affirm[s] [the Benson-Surface Defendants'] continuing grant of a security interest to Lender" in the Surface Assets and also "authorize[s]" Plaintiff to "take any and all action to maintain, perfect, preserve, and protect [his] security interest." Pl.'s MPSJ, ECF 127 at 23 (citing ECF 125., Ex. 1 at 2). Nothing in the quoted text, however, refers to a release of the security interest. *Cf. Express*, Black's (listing "Implied" as an antonym). The March 2019 Loan Modification agreement thus

does not supersede the Release and Liquidation Clauses.[14] This Court now interprets and applies the two clauses in turn.

### b. The Release Clause Was Not Triggered

The Release Clause, contained in the February 2019 Term Sheet, states:

> The IP, patents, know how, etc. to be released at the point in time that Surface has applied for a commercial loan and the Bank is requiring it for collateral or until a commercial loan is secured.

ECF 125, Ex. 8 at 2 (emphasis added).

The Parties offer several arguments focusing on the meaning of "until a commercial loan is secured." Defendant Roto Grit posits that because Surface Holdings, LLC received a $100,000 line of credit from Associated Bank, the Benson-Surface Defendants "secured" a "commercial loan" triggering the Release Clause. Roto Grit's MSJ, ECF 122 at 21. Plaintiff counters that, to trigger the Release Clause, Associated Bank must have "secured" the loan by "contact[ing] Plaintiff to demand release of his security interest." Pl.'s MPSJ, ECF 127 at 24.

What both Parties miss, however, is that the Release Clause could not have been triggered here because Surface LLC—not any other Surface entity—needed to secure the loan to trigger the Clause. Three pieces of textual evidence confirm this. First, the Term Sheet was signed by Defendant Benson solely as the President of Surface LLC, not as a representative of any other Surface entity. ECF 125, Ex. 8 at 3. Second, the final agreement between Plaintiff and Defendants Benson-Surface describes the Term Sheet as "signed by Surface, LLC and Lender." ECF 125, Ex. 1 at 1. And third, Defendant Benson knew how to sign deals representing the other

---

[14] Plaintiff shared this understanding of the Liquidation Clause in an email he wrote in March 2019. See ECF 129-1, Ex. A at 1.

Surface entities, *see supra* at 6–11—that he signed as Surface LLC unequivocally signals that the Parties intended Surface LLC to be bound to the Release Clause.

The $100,000 line of credit from Associated Bank was pursued exclusively by Surface Holdings, LLC—not, as required, by Surface LLC. ECF 126, Ex. 21 at 6 (letter from Associated Bank). Accordingly, the Release Clause was not triggered here.

### c. There Are Genuine Issues of Material Fact Concerning Whether the Liquidation Clause Was Triggered

#### i. The Meaning of the Liquidation Clause

The Liquidation Clause provides:

**LIQUIDATION EVENT PRIOR TO COMPLETION OF SURFACE ROTO GRIT DRYER #1**

In the event that the company is liquidated prior to completion of the Surface Roto Grit Dryer #1, sale value of the intellectual property shall be initially paid to Ron Tribble up to the $50,000 amount. Remaining sale value of the intellectual property shall be distributed proportionally to the investors.

ECF 125, Ex. 7 at 1.[15] Plaintiff and Defendant Roto Grit disagree as to the meaning of the terms "liquidated" and "liquidation event." In Plaintiff's view, the term "'liquidating event' as that phrase is commonly understood," requires "advertising and [the] sale of assets to the highest bidder." Pl.'s MPSJ, ECF 127 at 25; Plaintiff's Response to Defendant Roto Grit's MSJ ("Pl.'s Resp."), ECF 131 at 17. Defendant Roto Grit counters that the term's meaning is not so narrow and encompasses any situation in which a company sells "everything" and has "no material

---

[15] This Court recognizes that an earlier agreement states "[t]he Minimum Guaranteed Distribution . . . from . . . any . . . liquidation event will be . . . $2,000,000.00," ECF 125, Ex. 6 at 3, but the Liquidation Clause was added as part of an addendum to that agreement, ECF 125, Ex. 7. Because the Liquidation Clause modifies the minimum payment to Plaintiff from $2,000,000 to $50,000, it supersedes the earlier provision. *See City of Oregon City v. Clackamas County*, 96 Or. App. 651, 655–56 (1989) (explaining the effect of an addendum that "modifies" preexisting terms "substantially").

business assets left to sell or transfer." Roto Grit's Resp., ECF 129 at 14; Benson Response to Pl.'s MPSJ ("Benson Resp."), ECF 130 at 25 (similar).

Defendant Roto Grit's reading is more consistent with the ordinary meaning of liquidation. As a leading treatise explains, "[t]he term 'liquidation' has a fairly defined legal meaning. . . . It means the winding up of [a corporation's] business and affairs, including the collection of assets, the settlement of liabilities, the disposition of its properties, and the distribution of its remaining property among the shareholders according to their interests." 16A Fletcher Cyc. Corp. § 7968; *see Liquidate*, Black's (similar). Contrary to Plaintiff's understanding, this definition does not require an open auction. As commonly understood, moreover, liquidation entails paying off preexisting debts—i.e., the debts secured by security interests in the corporation's assets. *See Claimant ID 100081155 v. BP Expl. & Prod., Inc.*, 920 F.3d 925, 931 (5th Cir. 2019) (citing dictionary definitions and summarizing that "[t]hese dictionaries . . . suggest that the prevailing meaning of 'liquidation' is sale of assets to pay off debts"); *Liquidate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/liquidate (last updated Dec. 12, 2023) ("[T]o . . . apportion assets toward discharging the indebtedness of."). Thus, those interests were to be released, and their corresponding debts discharged, at the time of liquidation.

Plaintiff resists this last point, arguing that the "liquidation event" described in the Liquidation Clause does not necessarily require the release of its interests in the Surface Assets, but this assertion is unpersuasive. Plaintiff points to the passage preceding the Liquidation Clause, which states that "[t]his Addendum Agreement including the security interest in the intellectual property shall be terminated without recourse upon completion of the build, test, and functional readiness for demonstration and lease of the Surface Roto Grit Dryer #1." ECF 125,

Ex. 7 at 1. According to Plaintiff, this provision shows that "[t]he parties knew how to provide for a lien release had they intended to do so." Pl.'s Resp., ECF 131 at 16. But Plaintiff identifies no rule of contract interpretation that an unambiguous term's meaning must change because the parties used more specific language elsewhere in the contract. *Cf. Van v. Fox*, 278 Or. 439, 446 (1977) ("[N]either party should be allowed to avoid his contractual duties merely because the language which was utilized to express the agreement is less specific and complete than that which a careful lawyer would ordinarily employ."). Accordingly, this Court abides by the plain meaning of "liquidation."[16]

### ii. Application of the Liquidation Clause

Defendant Roto Grit contends that the December 2019 APA triggered the Liquidation Clause because it provided Plaintiff $50,000 to release his security interests in the Surface Assets. For two independent reasons, though, this Court holds that there are genuine disputes of material fact that preclude a ruling on summary judgment.

First, as explained above, there are genuine issues of material fact as to whether that Agreement is avoidable as a fraudulent transfer. *Supra* at 20–25. Thus, there are necessarily genuine issues of material fact as to whether the Agreement was a valid transfer of assets sufficient to trigger the Liquidation Clause. *Cf.* Restatement (Second) of Contracts § 311, cmt. i (Am. Law Inst. Oct. 2023 update) ("A release of the promisor may be a fraud on the beneficiary or on other creditors of the promisee if the promisee is insolvent and the release is made without fair consideration, or if the release is made with actual intent to hinder, delay or defraud

---

[16] Per the terms of the nine agreements, it matters not whether Plaintiff was a lender or investor because even though Plaintiff seemingly converted his loans to Defendants Benson-Surface into an "investment," the agreements make clear: "IP, patents, know how etc. that is held as security for loan to continue as security for investment." ECF 125, Ex. 8 at 2.

creditors. In that event, even though the beneficiary has not assented or relied, the release is not effective except to the extent that the promisor has innocently given consideration for it." (citations omitted)); Restatement (First) of Contracts § 143, cmt. b (Am. Law Inst. Oct. 2023 update) ("If there is an actual intent on the part of the promisee to defraud, the promisor can claim no advantage from a release or rescission unless he gave value therefor and was ignorant of the promisee's wrongful intent."); *Norris v. R &T Mfg., LLC*, 265 Or. App. 672, 681 (2014) (affirming trial court decision finding that a "transfer of assets" was a "fraudulent transfer under ORS 95.230(1)(a)" and thus that a debt, which had been reduced to judgment, had to be enforced); *Lachapelle v. Kim*, Case No. 15-cv-02195-JSC, 2015 WL 5461542, at *5 (N.D. Cal. Sept. 16, 2015) ("California's Uniform Fraudulent Transfer Act . . . provides that a transfer may be deemed invalid if a debtor transfers property with 'the actual intent to hinder, delay, or defraud any creditor of the debtor.'" (quoting Cal. Civ. Code. § 3439.04(a)(1))).

Second, the status of the Surface Defendants—the entities that would have needed to liquidate—is a point of considerable confusion. At oral argument, counsel for Defendants Benson, Surface, and Roto Grit could not agree as to whether some of the Surface Defendants remain corporate entities in good standing; Defendant Benson's counsel stated that they do, consistent with his client's declaration, *see* Benson Decl., ECF 130-1 ¶¶ 2–3, yet the Surface Defendants' counsel stated that they do not. *Cf. Tyree Oil, Inc. v. Bureau of Lab. & Indus.*, 168 Or. App. 278, 283 (2000) (holding that there was no consolidation or merger of entities when they remained legally distinct). And there is no clear evidence on the record about the current status of those entities and what assets they continue to own after the APA. For these reasons, too, there are genuine issues of material fact as to the Surface Defendants' current status that are relevant to whether the Liquidation Clause has been triggered.

PAGE 32 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

\*  \*  \*

In sum, the Release Clause has not been triggered, and as to whether the Liquidation Clause has been, there are disputed issues of material fact precluding summary judgment.

**2.  This Court Denies Summary Judgment to Plaintiff and Defendant Roto Grit**

From this conclusion, this Court holds that both Defendant Roto Grit's Motion for Summary Judgment and Plaintiff's corresponding Motion for Partial Summary Judgment must be denied. This Court addresses the relevant claims and counterclaims in turn.

**a.  Plaintiff's Claims**

Except those directed solely against Defendant Benson, Defendant Roto Grit has sought summary judgment on all of Plaintiff's claims: (1) breach of contract against the Benson-Surface Defendants and Defendant Roto Grit; (2) foreclosure of security interest against the Benson-Surface Defendants and Defendants Roto Grit and DLS; (5) claim and delivery against the Benson-Surface Defendants and Defendant Roto Grit; (6) declaratory relief against Defendants Benson and Roto Grit; (7) constructive trust against Defendant Roto Grit; and (9) conversion against Defendant Roto Grit. For his part, Plaintiff has sought summary judgment on an overlapping set of his claims: (1) breach of contract against the Benson-Surface Defendants and Defendant Roto Grit; (2) foreclosure of security interest against the Benson-Surface Defendants and Defendants Roto Grit, and DLS; (5) claim and delivery against the Benson-Surface Defendants and Defendant Roto Grit; and (6) declaratory relief against Defendants Benson and Roto Grit. *See also supra* at 5 n.4.

As Plaintiff's Second Amended Complaint makes clear, all of these claims hinge on Plaintiff having a valid security interest in the Surface Assets. *See* SAC, ECF 95 ¶¶ 31–32, 35, 52, 56–57, 65, 76. Yet as explained above, there is a dispute of material fact over whether

PAGE 33 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Roto Grit and the Benson-Surface Defendants triggered the conditions to release Plaintiff's security interest in the Surface Assets. Accordingly, this Court must deny both Defendant Roto Grit's and Plaintiff's cross-motions for summary judgment on these claims because, at this time, this Court cannot determine Plaintiff's rights under the nine agreements.

### b. Defendants' Counterclaims

This Court further denies Plaintiff's motion for summary judgment as to Defendant Roto Grit and the Benson-Surface Defendants' counterclaims against Plaintiff for breach of contract and declaratory and injunctive relief. Pl.'s MPSJ, ECF 124 at 8, 20. Because it is disputed whether Plaintiff has any valid security interests under the nine agreements, at this posture, Plaintiff cannot negate Defendants' allegations that Plaintiff has breached the nine agreements by refusing to release his UCC-1s in the Surface Assets. *See* Roto Grit's MSJ, ECF 122 at 21.

### c. Defendant DLS's Counterclaim for Foreclosure

Plaintiff also moved for summary judgment on Defendant DLS's Counterclaim for Foreclosure on the ground that Plaintiff has a superior security interest to DLS in the Surface Assets. Pl.'s MPSJ, ECF 127 at 31. Defendant DLS did not file a response brief. Nonetheless, because it is disputed as a matter of fact whether Plaintiff has any interests in the Surface Assets under the nine agreements, this Court must deny Plaintiff's motion. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (explaining that even if a party does not respond to an adverse motion for summary judgment, the court must still deny the motion if "the movant has failed to meet its burden of demonstrating the absence of triable issues").

## C. Defendant Roto Grit Is Liable for at Least $650,000 of the Benson-Surface Defendants' Alleged Breach of the Nine Agreements

Under Oregon law, when "one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor."

PAGE 34 – OPINION AND ORDER DENYING DEFENDANT ROTO GRIT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Gonzalez v. Standard Tools & Equip. Co*., 270 Or. App. 394, 397 (2015) (citation omitted).

There are four exceptions, however, under which the purchasing corporation becomes liable for

the debts and liabilities of the selling corporation:

> (1) Where the purchaser expressly or impliedly agrees to assume
> such debts; (2) where the transaction amounts to a consolidation or
> merger of the corporations; (3) where the purchasing corporation is
> merely a continuation of the selling corporation; and (4) where the
> transaction is entered into fraudulently in order to escape liability
> for such debts.

*Id.* (citation and internal quotation marks omitted).

Defendant Roto Grit essentially concedes that it can be found liable up to $650,000 for

any alleged breach of contract by the Benson-Surface Defendants. In Defendant Roto Grit's

words, it "has only assumed the liabilities to Plaintiff under very specific circumstances, i.e., (1)

where a Court enters an order determining the Benson-Surface Defendants are liable to Plaintiff;

and (2) where such an order would not cause the total liabilities assumed by Roto Grit to exceed

$650,000.00." Defendant Roto Grit's Reply Brief, ECF 134 at 7.

That said, at this procedural posture, the $650,000 cap is a floor, not a ceiling, for

liabilities. As discussed above, there are disputed issues of fact as to whether there was a merger

or consolidation of Defendant Roto Grit and the Surface Defendants, whether Defendant Roto

Grit is merely continuing the Surface Defendants' business, and whether the APA was entered

into fraudulently. *See Schmoll v. aCandS, Inc.*, 703 F. Supp. 868, 872–74 (D. Or. 1988)

(discussing and applying the fraudulent transaction exception to the general rule of successor

liability), *aff'd*, 977 F.2d 499 (9th Cir. 1992); *Giant Mfg. Co. v. Bikee Corp.*, No. Civ. 02–6222–

TC, 2004 WL 1698056, at *5–6 (D. Or. July 28, 2004) (discussing the continuation exception).

Should the jury find in Plaintiff's favor on any of these issues and decide to award more than

$650,000 to Plaintiff, Defendant Roto Grit could be responsible for more than the $650,000 liability it expressly assumed.

## CONCLUSION

This Court DENIES Defendant Roto Grit's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment. All claims, counterclaims, and crossclaims must be resolved at trial. For the Parties' convenience, this Court lists these claims below:

| | Plaintiff's Claims |
|---|---|
| 1 | Breach of contract against Defendants Benson-Surface and Roto Grit |
| 2 | Foreclosure of security interest against Defendants Benson-Surface, Roto Grit, and DLS |
| 3 | Breach of fiduciary duty against Defendant Benson |
| 4 | Negligent misrepresentation against Defendant Benson |
| 5 | Claim and delivery against Defendants Benson-Surface and Roto Grit |
| 6 | Declaratory relief against Defendants Benson and Roto Grit |
| 7 | Constructive trust against Defendant Roto Grit |
| 8 | Actual fraud and constructive fraud against Defendants Benson-Surface and Roto Grit |
| 9 | Conversion against Defendant Roto Grit |
| | **Defendants Benson-Surface & Roto Grit's Counterclaims** |
| 1 | Breach of contract/interference with contractual relations |
| 2 | Declaratory relief |
| 3 | Injunctive relief |
| | **Defendant DLS Factory's Cross- and Counterclaims** |
| 1 | Breach of contract/foreclosure against Plaintiff and Defendants Benson-Surface and Roto Grit |
| 2 | Fraudulent conveyance against Defendants Benson-Surface and Roto Grit |
| 3 | Successor liability against Defendants Roto Grit and Benson-Surface |

**IT IS SO ORDERED.**

DATED this 21st day of December, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge